# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

ATLAS DATA PRIVACY
CORPORATION, *as assignee of
individuals who are Covered Persons*,
JANE DOE-1, *a law enforcement officer*,
JANE DOE-2, *a law enforcement officer*,
EDWIN MALDONADO, SCOTT
MALONEY, and JUSTYNA MALONEY,

        Plaintiffs,

v.

SPY DIALER, INC., RICHARD ROES 1-
10, *fictitious names of unknown individuals*
and ABC COMPANIES 1-10, *fictitious
names of unknown entities*,

        Defendants.

DOCKET NO. 1:24-cv-11023

CIVIL ACTION

---

## MEMORANDUM OF LAW OF DEFENDANT, SPY DIALER, INC.,
## IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY

---

**Kaufman Dolowich LLP**
Christopher Nucifora, Esq.
Timothy M. Ortolani, Esq.
Court Plaza North
25 Main Street, Suite 500
Hackensack, New Jersey 07601
Tel: (201) 708-8207
Fax: (201) 488-6652
cnucifora@kaufmandolowich.com
tortolani@kaufmandolowich.com

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ..................................................................................1

LEGAL ARGUMENT ...........................................................................3

    I.    PLAINTIFFS FAILED TO MEET AND CONFER PRIOR TO FILING THEIR MOTION IN VIOLATION OF THE LOCAL RULES.……………………...................................................................3

    II.    PLAINTIFFS' MOTION IS SUBSTANTIVELY MERITLESS, AS SPY DIALER HAS PROVIDED COMPLETE RESPONSES TO THE REQUESTS WHICH ACTUALLY BEAR UPON THE ISSUE OF PERSONAL JURISDICTION....................................................................4

        Interrogatories ............................................................................7

        Document Requests ..................................................................13

CONCLUSION ....................................................................................21

i

## INTRODUCTION

Defendant, Spy Dialer, Inc. ("Spy Dialer"), respectfully submits this brief in opposition to Plaintiffs' motion to compel additional discovery from it in connection with its motion to dismiss Plaintiffs' Complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). Spy Dialer has no connection to New Jersey whatsoever and its jurisdictional discovery responses show that. Plaintiffs, however, whose theory of jurisdiction seems to be constantly evolving, take issue with certain of Spy Dialer's responses, claiming they are incomplete. Plaintiffs are wrong, and Plaintiffs' motion, which was filed without ever attempting to meet and confer with Spy Dialer beforehand, and which seeks additional information where unnecessary or information far outside the parameters of jurisdictional discovery, should be denied in its entirety.

Spy Dialer filed its motion to dismiss for lack of personal jurisdiction on March 18, 2025. (*See* ECF No. 15.) In short, aside from the instant litigation, the motion papers made clear that there is no connection between Spy Dialer and the forum. Nevertheless, after the Court permitted Plaintiffs to undertake what was supposed to be limited, targeted jurisdictional discovery, on May 15, 2025, Spy Dialer served its responses to interrogatories and document requests received from Plaintiffs the month prior. On June 4, 2025, Plaintiffs served a generalized letter purporting to advise Spy Dialer, and all other Defendants who moved to dismiss

Plaintiffs' Complaint for lack of personal jurisdiction, of deficiencies in its discovery responses. (*See* Exhibit A to the Declaration of Timothy M. Ortolani, Esq.) The letter, though, failed to provide any information as to how Spy Dialer's responses were supposedly incomplete or deficient. Instead, it listed which responses to various interrogatories and document requests Plaintiffs believed were deficient, without any detail or explanation as to why. In fact, despite proposing in their June 4, 2025 letter that there be "an initial joint call on or before Friday, June 6 with all defense counsel and a subsequent call with individual counsel," Plaintiffs failed to invite the undersigned to the all-defense-counsel call and never contacted either the undersigned or Christopher Nucifora, Esq. to discuss the specific issues Plaintiffs had with Spy Dialer's responses. (Ortolani Dec., ¶ 7.) Thus, Plaintiffs' motion is the first time Spy Dialer is learning of the basis for Plaintiffs' claims that the subject responses are incomplete and, in some instances, is the first time that Spy Dialer is learning that Plaintiff is claiming that certain of its responses are deficient. For example, Plaintiffs argue that Spy Dialer's responses to Interrogatory Nos. 1 and 6 and Document Request No. 23 are deficient in their motion, but omit these from their list of purported deficient responses contained within their June 4, 2025 generalized letter. Not only is Plaintiffs' motion procedurally flawed, but it is also substantively meritless.

## LEGAL ARGUMENT

### POINT I

### PLAINTIFFS FAILED TO MEET AND CONFER PRIOR TO FILING THEIR MOTION IN VIOLATION OF THE LOCAL RULES.

Pursuant to Local Rule 37.1(b):

> Discovery motions must be accompanied by an affidavit, or other document complying with 28 U.S.C. § 1746, certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that the parties have been unable to reach agreement. The affidavit, or other document complying with 28 U.S.C. § 1746, shall set forth the date and method of communication used in attempting to reach agreement.

L. Civ. R. 37.1(b)(1). Plaintiffs' motion is unaccompanied by anything tending to establish that Plaintiffs attempted in good faith to meet and confer with Spy Dialer regarding the discovery responses at issue—because Plaintiffs did not.

After sending the purported deficiency letter at 11:39 p.m. on Wednesday, June 4, 2025, Plaintiffs inquired of all Defendants' availability to discuss the letter that same week. Then, on June 6, 2025, Plaintiffs offered one of two windows on Monday, June 9, 2025. The undersigned responded that same day confirming availability for one of the windows offered, between 2:00 p.m. and 4:00 p.m. (*See* Ex. B to Ortolani Dec.) Notwithstanding the same, the undersigned was never sent an invitation to the group wide call and was never contacted about an individual

3

meet and confer. Plaintiffs, as the proponent of the motion to compel, bear the burden of complying with Local Rule 37.1(b). Plaintiffs have failed to carry that burden. Denial of Plaintiffs' motion on this basis alone is warranted. *See Mesadieu v. Martinez*, No. CV 18-842 (JXN), 2023 WL 3052331, at *3 (D.N.J. Apr. 24, 2023) ("failure to comply with . . . L. Civ. R. 37.1(b)(1) is a sufficient procedural basis upon which to deny Plaintiff's motion"); *Rieu v. RVT Wrangleboro Consumer Square, LLC*, No. 119CV18390NLHKMW, 2020 WL 6144731, at *1 (D.N.J. Oct. 20, 2020) (denying motion to compel because "the motion did not comply with Local Rule 37.1").

## POINT II

### PLAINTIFFS' MOTION IS SUBSTANTIVELY MERITLESS, AS SPY DIALER HAS PROVIDED COMPLETE RESPONSES TO THE REQUESTS WHICH ACTUALLY BEAR UPON THE ISSUE OF PERSONAL JURISDICTION.

Plaintiffs predictably have not heeded the Court's instruction to proceed with limited, targeted discovery. Instead, recognizing the infirmness of any argument that Spy Dialer, or any of the other moving Defendants, "purposefully availed" themselves of the privilege of conducting business in New Jersey, they have shifted their theory of jurisdiction to the "effects test" under *Calder v. Jones*, 465 U.S. 783 (1984)—another doomed theory—and taken the opportunity to attempt a deep dive into discovery that pertains solely to the merits of their claims. Where appropriate,

4

Spy Dialer, like every other Defendant, noted the same in response to numerous of Plaintiffs' objectionable requests. But, where a request was actually one that was relevant to the jurisdictional analysis, Spy Dialer provided responses that are undoubtedly complete. For ease of reference, Spy Dialer briefly addresses each of the discovery responses Plaintiffs claim are deficient. They include: Interrogatory Nos. 2, 3, 4, 5, 7, 8, 9 and 10; and Document Request Nos. 1, 2, 3, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 21.

Before discussing each of Spy Dialer's discovery responses, however, it is necessary to briefly highlight why *Calder* is of no benefit to the Plaintiffs. Under the *Calder* effects test, a plaintiff must "plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024). "[T]he effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim [its] conduct at that state." *Id.* at 191. For that reason, courts need not consider the first two prongs of the test unless the third prong is satisfied. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). Nevertheless, the first two prongs are quickly disposed of. First, Daniel's Law is not an intentional tort; for that matter, it is not even a tort. An intentional tort is one that is "committed by someone

acting with general or specific intent." *See* Black's Law Dictionary, *Intentional Tort* (12th ed. 2024). There is no intent requirement under Daniel's Law, whatsoever. Second, there are no facts pleaded which speak to the harm purportedly suffered "in the forum." The Complaint fails to specify who of the Covered Persons who allegedly sent information takedown requests to Spy Dialer reside or work in New Jersey, or even what percentage of the Covered Persons who allegedly did so reside or work in New Jersey. All that is alleged is that the "Covered Persons include individuals who reside, work, or had previously resided or worked in New Jersey." (*See* Ex. C to Ortolani Dec., ¶ 24) It is impossible to conclude, from this allegation alone, that the "brunt of the harm," if any, and of anything, was felt in New Jersey. The burden to satisfy the third prong of the effects test—that a defendant "expressly aimed his tortious conduct at the forum"—is "an onerous burden." *Torre v. Kardooni*, No. CV224693SDWMAH, 2022 WL 17813069, at *4 (D.N.J. Nov. 29, 2022), *report and recommendation adopted*, No. 22-4693 (SDW)(MAH), 2022 WL 17812193 (D.N.J. Dec. 19, 2022). *See Walburn v. Rovema Packaging Machs., L.P.*, 2008 WL 852443, at *7 (D.N.J. Mar. 28, 2008) (explaining that "Plaintiff's contention that jurisdiction is proper because the Defendants committed an intentional tort against her in New Jersey with the knowledge that she was a[] New Jersey resident does not comport with the holding of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)" because "*Calder* requires deliberate

6

targeting of the forum" and "[t]he fact that the Plaintiff happens to live in New Jersey, and has the base of her operations there, is accidental for jurisdictional purposes," and thus, a "court cannot automatically infer that a defendant expressly aimed its tortious conduct at the forum from the fact that the defendant knew that the plaintiff resided in the forum").

Here, Plaintiffs have failed to allege in the Complaint anything tending to so much as even suggest that Spy Dialer "expressly aimed" anything, anywhere. All that Plaintiffs have alleged is that Spy Dialer did not process information takedown requests timely under Daniel's Law. There is no allegation that Spy Dialer knew it had received the nondisclosure requests, whether within or outside of the 10-business day timeframe in the statute, or, in the face of such knowledge, deliberately disregarded the requests and intentionally did not process them because they were sent by New Jersey residents or people who have previously lived or worked in New Jersey. Thus, there is simply nothing in the Complaint from which it can be inferred, much less concluded, that Spy Dialer "expressly aimed" anything at New Jersey or its residents, current or past.

### Interrogatories

**Interrog. No. 2:** "For each product, service, or digital platform identified in response to Interrogatory Number 1, provide information regarding all access, purchase, or use of the product since December 1, 2023 by anyone in New Jersey."

7

Spy Dialer responded as follows: "Spy Dialer's website, spydialer.com, is a free website that does not sell subscriptions and does not require that visitors of it register in order to use it.  Spy Dialer does not track visitors by state and has no information which speaks to usage of spydialer.com by anyone in New Jersey or any other state." It is clear that Spy Dialer responded to the interrogatory as only it could: it has no information to provide regarding usage of its website by anyone in New Jersey.  Such hardly constitutes a "refus[al] to answer" as Plaintiffs incredibly claim.

**Interrog. No. 3:** "Identify all officers, directors, employees, contractors, vendors, and any other individuals or entities who, on Defendant's behalf, have since December 1, 2023 been involved in any marketing, advertising, soliciting, or offering of any product, service, or digital platform that has published, provided access to, or otherwise made available information subject to Daniel's Law, including without limitation in New Jersey or to New Jersey customers."  Spy Dialer responded, "Spy Dialer objects to providing information regarding officers, directors, and employees as outside the scope of jurisdictional discovery. Spy Dialer additionally objects on the grounds that this interrogatory is vague and ambiguous and over broad.  Subject to and without waiving these objections, Spy Dialer does not do paid marketing or advertising in New Jersey or any other state.  Spy Dialer does not engage in any New Jersey-specific marketing or advertising, and none of its marketing is geared specifically towards New Jersey or New Jersey residents, or

specifically towards any other state or the residents of any other state." The interrogatory is obviously overbroad, at it can be fairly read to encompass all individuals, employees or otherwise, who have had any role, however tangential, and whether internal or external, in the operation of Spy Dialer's business. The identities of these individuals have absolutely nothing to do with whether Spy Dialer, under the *Calder* effects test or otherwise, is subject to personal jurisdiction discovery, and Plaintiffs have failed to articulate anything to the contrary.

**Interrog. No. 4:** "Identify any advertising or marketing activities conducted by Defendant or anyone acting on Defendant's behalf in New Jersey, including nationwide or multistate marketing activities that included marketing or advertising in New Jersey." Spy Dialer replied, "Spy Dialer does not engage in any New Jersey-specific marketing or advertising, and none of its marketing is geared towards New Jersey or New Jersey residents, or towards any other state or the residents of any other state, and instead relies on free search engine (e.g., Google) and social media content (e.g., Facebook and X (formerly Twitter)) for traffic." Merely because the answer is not helpful to Plaintiff, of course, does not mean that it is deficient. Plainly stated, Spy Dialer does not undertake any New Jersey-specific marketing. As it made clear, its general marketing is limited to that which has been published on its social media platforms: Facebook and X, nothing more. Its response makes clear that it has no "particular nexus" to New Jersey when it comes to marketing.

9

**Interrog. No. 5:** "Identify any entity with whom Defendant has since December 1, 2023 had any contracts, agreements, or arrangements in connection with or for the provision of any product, service, or digital platform that has published, provided access to, or otherwise made available information subject to Daniel's Law, including without limitation entities in New Jersey." Despite its unlimited scope, Spy Dialer tailored its answer perfectly to the jurisdictional analysis: "Objected to as overly broad and vague and ambiguous, and as seeking information outside the scope of proper jurisdictional discovery. Subject to and without waiving these objections, Spy Dialer states that it has no contracts, agreements, or arrangements with any New Jersey entity." Plaintiffs fail to explain how the existence of any contract with a non-New Jersey entity bears upon the issue of whether personal jurisdiction in New Jersey is proper. Of course, it does not. Spy Dialer's response—that it has not entered into any contracts with any New Jersey entity—adequately addresses any possible relevance the information sought by the interrogatory has on the issue of personal jurisdiction.

Spy Dialer, in lockstep with all other Defendants who moved to dismiss for lack of personal jurisdiction, objected to the balance of the interrogatories claimed by Plaintiffs as being deficient on the grounds that they were irrelevant to the personal jurisdiction analysis:

10

- **Interrog. No. 7:** "Identify any audit, review, or evaluation of Defendant conducted since December 1, 2023 by any officers, directors, employees, contractors, vendors, and other individuals or entities acting on Defendant's behalf for compliance with New Jersey law for any of Defendant's services, products, or digital platforms that publish, provide access to, or otherwise makes available information subject to Daniel's Law."

- **Interrog. No. 8:** "Identify all officers, directors, employees, contractors, vendors, and other individuals or entities who, on Defendant's behalf, have reviewed, analyzed, processed, and/or responded to any Daniel's Law requests received since January 12, 2023."

- **Interrog. No. 9:** "Describe all actions taken by Defendant to respond to any written requests under Daniel's Law received since January 12, 2023, including all communications with persons who sent nondisclosure requests to Defendant requesting redaction of their home addresses and phone numbers."

- **Interrog. No. 10:** "Identify any address or phone number of a New Jersey resident that remained available in the database associated with any of Defendant's products, services, or digital platforms 10 days or

11

more after Defendant received a nondisclosure request from a person
asserting a right to nondisclosure under Daniel's Law, including any
address or phone number of a New Jersey resident that is currently
available in the database of information associated with any of
Defendant's products, services, or digital platforms."

Interrogatory No. 7, which seeks information regarding compliance with New
Jersey law, i.e., Daniel's Law, and Interrogatory No. 9, which seeks information
regarding Spy Dialer's response to alleged requests sent to it under Daniel's Law,
represent obvious attempts to obtain merits-related discovery having nothing to do
with the issue of personal jurisdiction.  Whether Spy Dialer complied with New
Jersey law and how it responded to alleged takedown requests sent pursuant to
Daniel's Law, are merits questions.  Indeed, these combine to form the ultimate
question at issue in this litigation.  Relatedly, Interrogatory No. 10 essentially asks
Spy Dialer to confirm its own liability under Daniel's Law, which, of course, is by
no means even remotely conceded, but which, more importantly for purposes of
Plaintiffs' motion, has no bearing on the issue of personal jurisdiction.  And finally,
Interrogatory No. 8 fails to pass muster as a legitimate personal jurisdiction
interrogatory for the same reasons that Interrogatory No. 3 does.

**Document Requests**

In **Doc. Req. 1**, Plaintiffs requested an array of "all" documents, including ownership and registration documents (subsection a), marketing documents (subsection b), contracts and agreements with companies or individuals in New Jersey (subsection c), and documents which speak to Spy Dialer's "[i]nvolvement, participation, or role in the collecting, publishing, disseminating, selling, or providing access to, or otherwise making available information subject to Daniel's Law, including but not limited to the sources, methods, purposes, and recipients of such information" (subsection d). Where responsive documents existed, such as Spy Dialer's registration to do business in the State of California, and documents that speak to Spy Dialer's held trademarks, they were produced. As Spy Dialer explained in its interrogatory responses, its marketing efforts, which are not New Jersey-specific, are limited to its social media activity on Facebook and X, and it has no contracts with any New Jersey entity. Thus, its responses to subsections (b) and (c) was "None." And, despite the "catch all" nature of subsection (d), its response was "None," as well. These responses, again, do not reflect a "fail[ure] to produce documents," as Plaintiffs baselessly claim in their motion. Instead, they convey that Spy Dialer is not in a position to produce responsive documents, because it does not have any.

13

**Doc. Req. 2**: "All documents reflecting or relating to Defendant's revenues, profits, or income derived from any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law, including without limitation for products or services offered in New Jersey or to New Jersey customers." Spy Dialer, after objecting to the request to the extent it sought "discovery of Defendant's financial condition as a whole, as the request in this regard is overly broad, unduly burdensome, relevant only to damages discovery, and far outside the scope of proper jurisdictional discovery"—something the request clearly does—added that "[t]o the degree to which the document request seeks discovery of Defendant's financial condition to the extent it is driven by Defendant allegedly publishing, providing access to, or otherwise making available information subject to Daniel's Law, 'including without limitation for products or services offered in New Jersey or to New Jersey customers'—which is denied—none, as Spy Dialer has no state-specific documents in its possession relative to revenues, profits or income. In other words, Spy Dialer has no document in its possession which gives it the ability to determine the extent to which any given state is contributing to its revenues, profits, or income. Spy Dialer does not track visitors by state." This response is also more than adequate, as it informs Plaintiffs that Spy Dialer does not have any way to determine the extent to which a state, New Jersey or otherwise, is contributing to its bottom line.

14

**Doc. Req. 3:** "All documents reflecting or relating to Defendant's share of revenues, profits, or income derived from activities in New Jersey and any other state reflecting the state in which the activities generating the revenues, profits, or income occurred." This request, too, exceeds the scope of proper jurisdictional discovery to the extent it seeks information from "any other state," but to the extent it does bear upon the issue before the Court, Spy Dialer's responded, "None, as Spy Dialer has no state-specific documents in its possession which speak to its revenues, profits or income. In other words, Spy Dialer has no document in its possession which gives it the ability to determine the extent to which any given state is contributing to its revenues, profits, or income. Spy Dialer does not track visitors by state." This request, in sum and substance, is largely duplicative of the prior request. Spy Dialer's response, therefore, is, for all intents and purposes, the same. There is, simply put, no other answer Spy Dialer can give.

Spy Dialer, along with several if not all of the other Defendants, objected to the following requests on the grounds that they sought information irrelevant to the jurisdictional analysis:

- **Doc. Req. 5:** "All documents reflecting or relating to Defendant's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other entity associated with Defendant."

15

- **Doc. Req. 6:** "All documents reflecting or relating to Defendant's involvement with any related entity's communications, correspondence, or interactions with Plaintiffs or any other New Jersey residents who sent Daniel's Law Requests to Defendant or any other related entity."

- **Doc. Req. 7:** "All documents reflecting or relating to Defendant's policies, procedures, or practices for

  a. Processing, responding to, or complying with Daniel's Law Requests from New Jersey residents sent to Defendant or any other related entity.

  b. Handling information related to New Jersey residents."

- **Doc. Req. 9:** "All documents reflecting or relating to any complaints, claims, lawsuits, or investigations involving Defendant or any other related entity and any New Jersey residents or customers regarding any product or service that publishes, provides access to, or otherwise discloses personal information of New Jersey residents and where Defendant or any other related entity did not dispute the personal jurisdiction of the court in which those complaints, lawsuits, or investigations were based."

- **Doc. Req. 10:** "Any and all documents reflecting or relating to any training, education, or guidance provided by Defendant or any other related entity to its employees, agents, or representatives regarding any service that provides access to personal information of New Jersey residents, including but not

16

limited to the legal requirements, obligations, and rights under the Fair Credit Reporting Act ("FCRA"), the New Jersey Identity Theft Prevention Act ("NJITPA"), the New Jersey Fair Credit Reporting Act ("NJFCRA"), or any other New Jersey state law or regulation."

- **Doc. Req. 11:** "Any and all documents reflecting or relating to any audits, reviews, or evaluations conducted by Defendant or any other related entity or any third-party regarding compliance under New Jersey law for any product or service that publishes, provides access to, or otherwise makes available information subject to Daniel's Law."

- **Doc. Req. 12:** "Any and all documents reflecting or relating to any opt-out, exclusion, or suppression options or mechanisms offered or provided by Defendant or any other related entity to any New Jersey residents or customers through any of Defendant's websites identified in the Complaint, or any other product or service that publishes, provides access to, or otherwise discloses information subject to Daniel's Law."

- **Doc. Req. 13:** "Any and all documents reflecting or relating to any internal or external communications, correspondence, or discussions by Defendant or any other related entity regarding the introduction and passage of Daniel's Law in New Jersey, including the applicability, scope, and effect of the law."

17

- **Doc. Req. 14:** "All documents reflecting or relating to Defendant's receipt of nondisclosure requests pursuant to Daniel's Law, including the date of receipt, the manner of receipt, the number of requests, the contents of those requests, and Defendant's analysis of those requests."

- **Doc. Req. 15:** "All documents reflecting or relating to Defendant's response to Daniel's Law requests received from the Covered Persons and Individual Plaintiffs."

- **Doc. Req. 16:** "All documents reflecting or relating to any changes to Defendant's processes regarding Daniel's Law nondisclosure requests or any other requests to remove personal information of New Jersey residents."

- **Doc. Req. 17:** "All documents reflecting or relating to the actions taken by Defendant to preserve documents in connection with this litigation, including without limitation records of every time Defendant has published, provided access to, or otherwise made available the home addresses or phone numbers of the Covered Persons and Individual Plaintiffs."

- **Doc. Req. 21:** "All documents reflecting or relating to Defendant's modification of any product or service to address New Jersey laws and regulations, including but not limited to Daniel's Law, NJITPA, and NJFRCA."

18

All of these requests go to the heart of Plaintiffs' claims on the merits; none so much as even graze the issue of personal jurisdiction. Because "jurisdictional discovery is not a license for the parties to engage in a fishing expedition," courts "should take care to circumscribe the scope of discovery . . . to only the factual questions necessary to determine its jurisdiction." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018) (internal quotations omitted).

To justify their vastly overreaching and disproportionate discovery demands, Plaintiffs cite *Ford Motor* to argue that they are relevant to the issue of whether Spy Dialer was "systematic" or "systematically served" New Jersey in its business. But, first, Robert Scott's affidavit in support of Spy Dialer's motion to dismiss confirms that Spy Dialer was "systematic" about nothing when it comes to New Jersey. Mr. Scott, Spy Dialer's CEO, makes clear that Spy Dialer is not registered to do business in New Jersey, does not have any employees in New Jersey, has no physical address in New Jersey, occupies no property or office space in New Jersey, has no assets in New Jersey, conducts no marketing activities in New Jersey or directed to New Jersey residents, offers nothing in the way of services specific to New Jersey residents and nothing in the way of information exclusive to New Jersey or New Jersey residents, and has no financial relationships in New Jersey. (*See* ECF No. 15-3.) And second, *Ford Motor* is completely inapposite. There, specific jurisdiction was found in the *Ford Motor* cases, two related products liability cases arising out

19

of car accidents in the forum states, Minnesota and Montana, because Ford Motor Company "did substantial business in [each of] the State[s]—among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 355 (2021). Those facts simply do not exist here.

And, when they are less sure of what to say to establish relevancy, such as with Doc. Req. No. 9, which sought information about all other lawsuits in which Spy Dialer has been involved, Plaintiffs argue that their requests "may" lead to other information on Spy Dialer's "contacts with New Jersey." In other words, Plaintiffs' position is that the information is potentially relevant. But that is insufficient. *See, e.g., United States ex rel. Simpson v. Bayer A.G.*, No. CV 05-3895, 2021 WL 363705, at *1 (D.N.J. Feb. 2, 2021) (in the context of a subpoena, rejecting argument that materials sought contained "potentially relevant information" because "[s]uch an assertion is not sufficient to establish [the requesting party's] burden of proving relevancy").

Finally, **Doc. Req. 18** sought, "All documents reflecting or relating to the number of individuals with New Jersey addresses in any and all databases or on any sites that Defendant utilizes in connection with any product or services." Spy Dialer replied, "None." And **Doc. Req. 19** sought, "All documents reflecting or relating to the products or services that Defendant has delivered or otherwise made available to

20

businesses and individuals with information that includes New Jersey addresses, and the total amount and percentage of Defendant's revenue from those services or products." Spy Dialer responded, "None, as Spy Dialer has no documents that track visitors of spydialer.com by state." There is nothing deficient about either of these responses and, as to the latter, Spy Dialer previously informed Plaintiffs in its response to document request no. 3 that it had no ability to determine the "total amount and percentage" of its revenue on the basis sought.

## CONCLUSION

For all of the foregoing reasons and on the basis of the authority cited herein, Plaintiffs' motion to compel more specific answers to interrogatories and the production of additional documents should be denied.

Respectfully submitted,
**Kaufman Dolowich LLP**

*/s/ Timothy M. Ortolani*
Christopher Nucifora, Esq.
Timothy M. Ortolani, Esq.
Court Plaza North
25 Main Street, Suite 500
Hackensack, New Jersey 07601
Tel: (201) 708-8207
Fax: (201) 488-6652
cnucifora@kaufmandolowich.com
tortolani@kaufmandolowich.com

Dated: July 14, 2025